McBRIDE, Judge.
The plaintiff has appealed from the judgment dismissing his suit. Our brother below, in comprehensive written reasons for judgment, has stated his appreciation of the facts and the legal conclusions to be drawn therefrom, and finding them correct, except as to a slight and immaterial factual inaccuracy on which we will briefly comment hereinafter, we adopt the opinion as our own.
Said the judge:
“The father of an 8-year old boy sues to recover medical expenses and damages for personal injuries the boy sustained on Mardi Gras day in New Orleans (February 26, 1952) when struck by an automobile truck of defendants. Though the boy’s injuries were painful, he was fully recovered and had no residual injuries on the day of trial.
“The truck in question was owned and operated by a colored driver hired by defendants for the day to drive them and their wives around the city to participate in a parade and otherwise to engage in the Carnival frolic and festivities, .as was their annual custom. .
“The parents did not accompany their son to the parade or engage in the festivities themselves, because both were ill at home. The injured child and another son, aged thirteen, were entrusted to the care of a colored maid, who had been in their employ for more than five years, and with whom the children had previously been entrusted on other occasions..
“The colored maid and the two children left the family home on Dan-neel Street, about fifteen blocks away from the scene of the accident, which took place on the lower lake side of St. Charles Avenue, about 100 feet from the intersection of Louisiana Avenue. St. Charles Avenue is a wide thoroughfare with two paved lanes separated by a wide neutral ground traversed by double street car tracks. The route of the parade was up St. Charles Avenue, turning at Louisiana Avenue, to continue down St. Charles Avenue. It was just before the truck in question was to enter into Louisiana Avenue to make the turn down St. Charles Avenue that the accident occurred, about one o’clock p. m.
“The particular truck in question was the 31st of a series of trucks, called the Crescent City Krewe, that was following the Rex parade. The parade was halted about 20 minutes and defendants’ truck was stopped in the street about 100 feet from Louisiana Avenue, upon instruction from a policeman regulating traffic. Upon a signal from the police officer to resume, defendants’ truck began slowly to move behind the truck ahead, when there was a shout that someone was hurt. Promptly the driver stopped his truck within 7 feet of the point from which it started. Plaintiff’s son lay on *675 ¿he street just behind the front right wheel of the truck, indicating the truck stopped almost instantly and that it could not have started or proceeded at an excessive speed. The driver was on the left side of the truck, in the cab, about five feet above the street.
“The colored girl was acting in loco parentis, so the parents were legally present when the child was injured. The colored maid testified she was holding the 13-year old boy with both hands because he was the more spirited of the two. The younger one was holding to or tugging on her uniform. He broke away from her once, but she recaptured and brought him back. She did not see him again until the accident had occurred, and believes the child had been swept away from her by the surging crowd milling around the trucks seeking favors from the maskers.
“A street scene in New Orleans on Mardi Gras or Carnival Day is familiar to every citizen and every visitor. There is general masking, endless parades participated in by vehicles, motor driven and horse drawn, mounted maskers, marching clubs, parades, and milling crowds surging back and forth, old and young — fathers and mothers holding children in their arms or on their shoulders, shrieking and shouting to the maskers on trucks and floats to throw them something, even risking life and limb under truck wheels or horses’ hooves to catch or retrieve a fallen trinket.
“There is no evidence that the truck started or proceeded at an excessive speed. In the progress of such parades there is often a sudden start and halt. The driver, by the exercise of extreme care, consistent with the surrounding circumstances, could not have discovered the peril of plaintiff’s son. Even had he alighted from the truck and circled it, there would be no assurance before he started again that an adult or child would not in the meantime get in a position of concealed danger. Under the conditions prevailing at the time, the pedestrian watching the parade is better able to protect himself against injury than the driver to protect him.
“Much is made over the failure of the driver to blow his horn before proceeding. With the mad shouting and shrieking by the multitude, and the creation of noises by all kinds of noise-making gadgets, the blowing of a horn by the driver would only have added to the din and proved an idle gesture. Furthermore, all those watching a Carnival parade must know that the floats stop and start at a moment’s notice.
“The driver’s duty was to drive carefully and keep a lookout straight and laterally ahead, within his normal range of vision. He had a right to assume that all pedestrians would exercise due care, including parents having children in their custody. The rule applying to children playing in the street is not applicable under these circumstances.
“In view of the circumstances prevailing, the milling crowds, the supervision of the traffic officer, the usage and customs prevailing on Carnival Day, I can not hold that the driver of the truck in question was guilty of negligence that resulted in the injury to the child. As far as the driver of the truck is concerned, the accident was unavoidable.
“Since I do not find the driver was in any manner guilty of primary negligence, it is not necessary to discuss whether this 8-year old boy, very intelligent and bright, was guilty of contributory negligence or assumption of risk; or whether or not the parents themselves were guilty of assumption of risk and contributory negligence that would bar them from recovering medical expenses resulting from the child’s injuries.”
In detailing the facts, the judge states that the accident took place about 100 feet *676 from the intersection of Louisiana Avenue, but the witnesses are unanimous in their statements that the accident happened about 40 feet from the intersection.
The judgment appealed from is affirmed.
Affirmed.