YARRUT, Judge.
This is an appeal from a judgment of the District Court, in a direct action against the insurer, awarding Plaintiff $4111.85 damages for personal injuries sustained when she was knocked or fell from a 5-foot aluminum stepladder while watching a Mardi Gras Parade in the City of New Orleans in March 1962, at about 11 A M., at the intersection of St. Charles Ave. and St. Andrew St. The alleged offending float was the 4th of a series of floats of the parade of the Krewe of Elks which followed immediately behind the Rex Parade.
Plaintiff, a widow 52 years of age, weighing 150 lbs., with her 13-year old grandson, was perched on the stepladder near the neutral ground curbing of St. Charles Ave. in the intersection of St. Andrew St., to view the parades. Both were reaching with their hands to catch trinkets thrown by the maskers on the floats, when, as Plaintiff alleges, a truck owned and operated by Diaz Cartage Company (Defendant’s insured) under hire by the Krewe of Elks, decorated in usual Mardi Gras fashion, veered from the path of the parade into the St. Andrew St. intersection, struck their ladder and knocked them to the street, causing personal injuries only to Plaintiff.
The case was tried in the District Court which found the following facts:
“1. The Court finds as a fact that the Number 4 float in the Parade of the Krewe of Orleanians entitled ‘DOVE OF PEACE’ was the float that struck the ladder in question.
“2. The ornaments on the side of the float, representing ‘Clouds,’ protruded at least 10 inches from the side of the truck.
“3. The ‘Clouds’ were composed of cloth material stuffed with moss.
“4. The float ‘Dove of Peace’ was driven too close to the curb, causing the trailer portion of the truck, specifically the protruding decorations, ‘The Clouds’ to strike the ladder.
“5. The truck (float No. 4) stopped after the accident and then started up again.
“6. Individual riders had gin and beer on the float.
“7. The ladder was placed as described by Allen Boudreaux, Jr.”
*715 The Court then concluded that the driver of the float was negligent in that “he drove too close to the curb which caused the ornaments on the side of the truck to strike the ladder,” and further, that Plaintiff did not expose herself and assume the risk of bodily injury as pleaded in the alternative by Defendant.
The scene of the accident was the intersection of the downtown roadway of St. Charles Ave. and St. Andrew St. The stepladder was in the middle of the intersection of St. Andrew St. about two feet from what would be the extension of the neutral ground curb. St. Charles Ave. has two roadways (uptown and downtown) about 31 feet wide, separated by an elevated 6-inch grass neutral ground, 31 feet wide, traversed by two electric street car tracks. At the lower side of St. Andrew St. the downtown roadway narrows to 28 feet, 7 inches, and makes a 3-degree curve to the left.
The principal witnesses were Plaintiff, her grandson, and three disinterested witnesses.
Plaintiff’s version of what happened just before the accident is best related by quoting her testimony under cross-examination:
“Q. Was anybody holding the ladder or was it standing up there by itself?
“A. It was just standing there with Allen and I on it.
“Q. Why were you all there? Were you catching trinkets or what?
“A. Catching trinkets.
“Q. As the floats passed?
“A. Yes.
“Q. Did you catch the trinkets with both or one hand?
“A. Probably one hand on the ladder and one hand up. My grandson, he probably had his two hands, up.
“Q. Were you holding him on the ladder while he was using both hands ?
“A. No.
“Q. He was supporting himself with his feet and using both hands?
“A. Yes.
“Q. And there was nobody holding the ladder steady?
“A. No.”
And about the surrounding crowd watching the parade, she testified:
“Q. Were there a good many people there in the vicinity looking at the parade?
“A. Yes.
“Q. Was it rather crowded?
“A. Yes.
“Q. Were you packed one against the other in that area?
“A. I don’t remember that. I don’t remember. I wouldn’t — I really don’t remember that.
ip í¡í % j{c sjs ip
“Q. Now, I believe you said you didn’t see the float that you say hit the ladder until the moment it hit or something like that?
“A. No, No. You know, it’s as a float passes by, you’re looking this way and as I turned I saw the name and my grandson said it’s going to hit us. That’s all I can remember. Then it hit.
“Q. You had been looking at the float that had just passed? You turned your head to look for the next one ? When you turned to look at the float that was *716 getting ready to pass you, did you realize it was going to hit?
“A. Not until the child said, ‘It’s going to hit us,’ you see, and then, well, you started — you just see something coming but you can’t do anything about it.”
The disinterested witnesses were Kenneth W. Kaupp, Ann Kaupp and Marilyn Burns, who were present near Plaintiff at the time of the accident. All three of these witnesses admitted that they did not actually see the truck strike the ladder and cannot testify positively that the truck struck the ladder or the ladder fell on the truck.
Kenneth W. Kaupp testified significantly as follows:
“Q. Did it leave the path that the other three trucks followed prior to that?
“A. To me it seemed like it was more or less to the inside of the neutral ground than the other trucks.
“Q. Was it on an angle at any time or was it always straight?
“A. I’m not sure.”
Ann Kaupp testified:
“Q. Did you see the truck pulling any ladders ?
“A. The truck grabbed this ladder that the lady was standing on. It was pushed into the two ladders we had standing there. I don’t think the truck touched our ladders at all. We had our cousin standing in front of them.
*‘Q. The truck grabbed the ladder the lady was standing on? Did you see it hit the ladder ?
“A. No. It did drag it, though.
“Q. Did you see it drag it?
“A. When I looked around I saw the ladder falling and it was hooked onto the trailer of the truck.
* * iji iji * ‡
“Q. Do you know if the truck grabbed it or did it just fall against the truck?
“A. I don’t know.”
Marilyn Burns testified:
“Q. And you didn’t see this truck hit the ladder, did you?
“A. No.”
The maskers on the truck, who testified, did not see the accident. They were having a gay time, imbibing in beer and gin. This is insignificant, because they had nothing to do with the operation or direction of the float.
It is a custom and tradition in New Orleans, universally known, that, on Mardi Gras Day in New Orleans, carnival parades move throughout the day, sponsored by various carnival organizations. The floats are built and festooned to depict current and ancient historical events, some equipped with weird human and animal creatures, mechanically operated, extending upwards from the conveying trucks as high as 10 feet, and outward a foot or two; during which thousands of spectators mill around the sidewalk and neutral ground curbs, on the routes of the parades, shouting and yelling, with outstretched hands, for favors and trinkets from the maskers on the floats. Friedman v. Vedros, La. App., 68 So.2d 673.
The float was travelling close to the curbing, with its superstructure extending outward about a foot, but we cannot agree that Plaintiff proved the float struck her ladder or caused it to fall. The disinterested witnesses were unable to state that any part of the float struck the ladder or *717 whether the ladder fell against the float. With crowds -of people milling around, and with Plaintiff and her grandson on the ladder, twisting and turning, and pleading for trinkets, without any anchorage of the ladder, their movements or the milling crowd could easily have caused the ladder to topple against the float.
There is no evidence that the driver of the truck was traveling at an excessive speed or suddenly deviated from the parade route. The only negligence found by the District Court was that the truck was driven too close to the neutral ground curb line, causing its superstructure to extend beyond it about one foot. Strange it is that no other spectators were injured, notwithstanding the many onlookers present and milling around. Had Plaintiff and her grandson been watching the approaching 4th float and not pleading with outstretched arms for trinkets from the one just passed, they could easily have stepped aside and avoided the contact.
To hold that a float in a carnival parade, travelling at regulated speed in the line of the parade, is required to twist and turn in order to avoid striking an onlooker, either on foot or perched on a ladder, would be to burden carnival and similar parades in a manner not contemplated by law. To twist and turn to avoid one group of spectators could easily result in injury to other spectators on the opposite side close to, and following, the parade.
Counsel for Plaintiff argues that float No. 4 made a crescent turn into and out of the intersection at St. Andrew St. and while so doing struck Plaintiff’s ladder. From the photograph of the float and the intersection, this does not seem physically possible, due to the length of the float, the narrow intersection, and the fact that a Public Service steel lamp post is located on the neutral ground, at the corner of St. Andrew St., which would have prevented the float making such a maneuver without running into, and destroying, the lamp post or the truck, which did not occur.
We conclude that Plaintiff has hot borne the burden of proof, by a preponderance of evidence, that it was the negligence of the driver of the float which caused the accident, as the ladder could well have been toppled over, either by her own or her grandson’s gyrations, or by one of the many milling, shouting onlookers watching and following the parade and pleading for the trinkets. It is not necessary, therefore, to consider the issue of assumption of risk or contributory negligence.
For the reasons herein assigned, the judgment appealed from is reversed and Plaintiff’s suit dismissed, at her cost in both Courts.
Reversed.